UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, THE NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL
CONSERVATION, and BASIL SEGGOS, as
Commissioner of the New York State Department of
Environmental Conservation,

                         Plaintiffs,

-v-

UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY, and ANDREW R. WHEELER, as
Administrator of the United States Environmental
Protection Agency,

                         Defendants.

1:19 CV 01029 (LEK/CFH)

**COMPLAINT FOR
DECLARATORY
JUDGMENT AND
OTHER RELIEF**

The State of New York, the New York State Department of Environmental Conservation ("NYSDEC"), and NYSDEC Commissioner Basil Seggos (collectively "the State"), through their attorney, Letitia James, Attorney General of the State of New York, for their complaint allege as follows:

## PRELIMINARY STATEMENT

1. The federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA," commonly known as the federal "Superfund"), requires the United States Environmental Protection Agency ("EPA") to select a remedial action to address environmental contamination that, upon completion, assures protection of human health and the environment. In 2006, EPA entered into a Consent Decree with General Electric Company ("GE") to settle GE's CERCLA liability as the party responsible for contaminating the Hudson River Superfund Site with polychlorinated biphenyls ("PCBs"). The Consent Decree required GE to perform the remedial action selected by EPA, which primarily consisted of dredging

select areas of PCB-contaminated sediments from the bed of the Upper Hudson River,[1] restoring habitat in areas dredged, and subsequent monitoring.

2.      GE completed remedial dredging in the fall of 2015, but EPA has found the remedy is not presently protective of human health and the environment. In fact, EPA has concluded that it does not have sufficient information to determine if or when the remedy will be protective. Nonetheless, on April 11, 2019, EPA issued a Certificate of Completion of the Remedial Action at the Hudson River Superfund Site to GE (the "Certificate of Completion") finding the remedy complete, which action gives rise to a covenant not to sue pursuant to the Consent Decree.

3.      The State brings this action pursuant to the federal Administrative Procedure Act ("APA") and the federal Declaratory Judgment Act for a declaration that EPA's issuance of the Certificate of Completion is *ultra vires*, arbitrary, capricious, and unlawful and inconsistent with CERCLA's requirements. The State seeks vacatur of the Certificate and the covenant not to sue that arises upon the issuance of the Certificate.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 2201(a). The issuance of the Certificate of Completion is subject to judicial review under the APA as a final agency action for

---

[1] The Upper Hudson River extends from the federal dam at Troy, New York upstream to the GE facilities that discharged PCBs into the River.

which there is no other adequate remedy. 5 U.S.C. §§ 702, 704. The relief sought is authorized by 28 U.S.C. §§ 1651(a), 2201(a), 2202 and 5 U.S.C. § 706.

5. Venue is proper in the Northern District of New York pursuant to 5 U.S.C. § 703 and 28 U.S.C. §§ 1391(e)(1)(C) because this action is brought against agencies of the United States and officers of the United States acting in their official capacities and the State plaintiffs are located there.

## PARTIES

6. The State of New York, as a body politic and sovereign entity, brings this action as plaintiff on behalf of itself in its proprietary capacity and as *parens patriae*, trustee, guardian, and representative of all residents and citizens of the State, including those individuals who use the Hudson River's resources and live in the vicinity of the Hudson River Superfund Site. The State has a compelling interest in the protection of the public and the environment of the State from dangers posed by contaminants. The State owns the land under the Hudson River and the fish and other wildlife contaminated with PCBs. Additionally, the NYSDEC Commissioner is the lawfully designated trustee of the State's natural resources covered by CERCLA, including the Hudson River, and the fish and other wildlife contaminated with PCBs. The State directly manages its wildlife and natural resources through NYSDEC.

7. Defendant EPA is an executive federal agency that has been delegated the responsibility for administering CERCLA. The PCB contamination and remedial action at Hudson River Superfund Site are within EPA's regulatory and

enforcement jurisdiction. Defendant Andrew R. Wheeler, sued in his official capacity, is the duly appointed Administrator of EPA.

## STATUTORY BACKGROUND

### A. CERCLA

8. CERCLA Section 121(b)(1)(G) directs that EPA "shall select a remedial action that is protective of human health and the environment." 42 U.S.C. § 9621(b)(1)(G).

9. CERCLA Section 121(d)(1) requires that a remedial action "shall attain a degree of cleanup … which assures protection of human health and the environment." 42 U.S.C. § 9621(d)(1).

10. CERCLA Section 122(a) authorizes EPA to enter into settlement agreements with parties responsible for environmental contamination to perform remedial actions that address the contamination. 42 U.S.C. § 9622(a). Section 122(f) permits EPA to provide settling responsible parties with a covenant not to sue concerning future liability, subject to certain prerequisite conditions and prescribes certain terms of those settlements. 42 U.S.C. § 9622(f). Importantly, Section 122(c)(1) requires any covenant not to sue contained in a settlement agreement to be in accord with the requirements of Section 122(f). 42 U.S.C § 9622(c)(1).

11. CERCLA Section 122(f)(3) provides that a "covenant not to sue concerning further liability to the United States *shall not take effect* until the President certifies that [the] remedial action has been completed *in accordance with the requirements of this Act*." 42 U.S.C. § 9622(f)(3) (emphasis added).

12. Further, CERCLA Section 122(f)(6)(A) requires that any covenant not to sue include an exception for future liability arising "out of conditions which are unknown at the time [EPA] certifies under [Section 122(f)](3) that the remedial action has been completed." 42 U.S.C. § 9622(f)(6)(A).

B. **The Administrative Procedure Act**

13. The APA provides a claim for relief to challenge any final agency action taken pursuant to any statute where the action is made reviewable by statute, or where there is no other adequate legal remedy. 5 U.S.C. § 704.

14. The APA authorizes courts to review final agency actions and hold unlawful and set aside final agency actions, findings, and conclusions when the action is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or when such action is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. §§ 701-706.

## FACTS

A. **The Hudson River Superfund Site**

15. In approximately 1947, GE began manufacturing industrial capacitors containing PCBs at two of its facilities along the Hudson River, in Fort Edward and Hudson Falls, New York. For decades, GE disposed of and released PCBs into the Hudson River. As a result of GE's releases, PCBs have migrated and come to be located throughout the Hudson River and surrounding areas, extending from Hudson Falls, New York to the Battery in Lower Manhattan.

16. PCBs cause a variety of adverse health effects. In humans, PCB exposure is associated with cancer as well as serious non-cancer health effects,

including effects on the immune system, reproductive system, nervous system, endocrine system, and others.

17. GE's disposal and release of PCBs into the Hudson River from its facilities significantly contaminated fish, resulting in the New York State Department of Health issuing Fish Consumption Advisories to the public beginning in 1975 and continuing to the present, which seek to limit human consumption of Hudson River fish. NYSDEC also prohibited recreational and commercial fishing in the Hudson River by regulation in 1976 and those regulations, with various modifications, have remained in effect to the present.

18. In 1984, EPA added the Hudson River to its National Priorities List as a Superfund Site. The National Priorities List identifies the most highly-contaminated sites throughout the United States and its territories, which require priority investigation and remediation because of known releases or threatened releases of hazardous substances, pollutants, or contaminants "based on a Hazard Ranking System score developed by EPA to assess the relative threat associated with releases of hazardous substances." 40 C.F.R. 300.425(a)-(d). The same year, EPA issued a Record of Decision ("ROD") that selected a remedial action to address, among other things, contaminated Hudson River sediments. With regard to Hudson River sediments, EPA's 1984 ROD determined that no remedial action would be taken at that time.

19. In 1989, NYSDEC requested that EPA reassess its "no action" remedy. In 2002, EPA issued a second ROD that selected a remedial action that included

targeted dredging of areas of accumulated sediment in the upper Hudson River that were found to contain high levels of PCBs. Also included in the 2002 ROD were institutional controls comprising of fish advisories and fishing restrictions, monitored natural attenuation of the remaining PCB contamination in the Hudson River, five-year reviews of the effectiveness of the remedy as required by Section 121(c) of CERCLA, and further evaluation of the Hudson River floodplains.

20. EPA's 2002 ROD established remedial action objectives to be achieved by targeted dredging that would assure the protection of human health and the environment. Specifically, EPA established objectives related to PCB levels in fish, which would reduce PCB levels to 0.4 milligram per kilogram (mg/kg) within five years of completion of dredging (i.e. 2020) and 0.2 mg/kg within sixteen years (i.e. 2031). Thus, a central purpose of the 2002 ROD was to address the PCB contamination underlying the Department of Health's Fish Consumption Advisories and NYSDEC's fishing regulations by ensuring *de minimis* contamination in fish and allowing the safe consumption of Hudson River fish by the public, thereby protecting human health and the environment.

21. NYSDEC concurred in EPA's 2002 ROD and, anticipating that it would be implemented in accordance with CERCLA, specifically found that "significant PCB sources to the Hudson River will be abated, which should enable the State to reduce the current fishing restrictions and consumption advisories [and] . . . the selected remedy [will] be protective of human health and the environment, and will

7

reduce public health and environmental risk." 2002 ROD, Appx B (NYS Concurrence Letter).

**B.   EPA's 2006 Consent Decree with General Electric**

22.    In 2006, EPA and GE entered into a Consent Decree, *U.S. v. General Electric*, NDNY Index No. 05-1270, which required GE to perform the remedial action selected in EPA's 2002 ROD.

23.    In 2009, GE began implementing the dredging portion of the remedial action selected by EPA's 2002 ROD and concluded dredging in the fall of 2015.

24.    The Consent Decree delineated the process for EPA to issue a Certificate of Completion of the Remedial Action. The process included GE's submission of a Remedial Action Completion Report with a request for EPA's issuance of a Certificate of Completion of the Remedial Action:

> If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action and after a reasonable opportunity for review and comment by the State and by the Federal Trustees for Natural Resources, that the Remedial Action has been performed in accordance with this Consent Decree, EPA will so certify in writing to Settling Defendant. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff).

2006 Consent Decree ¶ 57(d). The Consent Decree provides a covenant not to sue or take administrative action against GE (the "Covenant Not to Sue"), "for administrative or judicial injunctive-type relief with respect to PCB contamination in the Upper Hudson River, or for reimbursement of [EPA's] response costs in connection with the Upper Hudson River." *Id.* ¶ 98. The Consent Decree provides

that the Covenant Not to Sue "shall take effect upon EPA's issuance of the Certificate of Completion…." *Id.* ¶ 99(b).

25. The Consent Decree provides that if EPA at any time determines the remedial action is not protective of human health and the environment, "EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP [National Contingency Plan]." *Id.* ¶ 23. However, after the Certificate of Completion is issued, EPA must discover previously unknown information or conditions before it may require further remedial action by GE. *Id.* ¶ 101(b). The corpus of information or conditions that may be considered to make that finding is limited in time and scope—the information or conditions must have been unknown to EPA prior to issuing the Certification of Completion and the information or conditions must indicate that the remedial action is *not* protective of human health and the environment. *Id.* ¶¶ 101(b), 102(c).

26. In December 2016, GE submitted a request to EPA for a Certificate of Completion of the Remedial Action.

27. Because EPA has not found the remedy protective as required by law, since 2016 and continuing to date, the State has objected to the issuance of the Certificate in meetings with EPA, and in extensive correspondence with EPA.

C. **The Efficacy of the Completed Remedial Action**

28. In two key areas– the levels of PCBs in fish and in river sediment– the remedial action has not proven effective. Accordingly, the Hudson River remedy is not protective of human health and the environment.

29. The most recent fish sampling data reveals that PCB concentrations in Hudson River fish remain high– currently, three times higher than the 2002 ROD's remedial action objective of 0.4 mg/kg within five years of dredging completion (i.e. 2020). Indeed, average PCB concentrations in fish have remained largely unchanged in the three years since the dredging ceased.

30. Surveys conducted by the New York State Department of Health since 2008 have found that significant numbers of people, including women and children, are eating fish caught from the PCB-contaminated portion of the Hudson River; they were not heeding the annual Fish Consumption Advisories cautioning against eating fish. The State provided that survey information to EPA.

31. In the summer of 2016, two public interest groups, Scenic Hudson and Sierra Club, also conducted a fish consumption survey, which also confirmed that a significant number of people were eating fish caught in the Hudson River. Of the survey respondents, sixty percent reported eating fish taken from the Hudson River. Of those, twenty percent eat fish twice or more per month and eight percent do so twice per week. Those groups provided that survey information to EPA.

32. Additionally, results of recent Hudson River sediment sampling performed by NYSDEC in 2017 show that many "hot spots," or areas of high PCB concentrations, remain in the Upper Hudson River and that re-deposition of PCBs is occurring in and from dredged areas. NYSDEC completed that sampling in the autumn of 2017 to determine whether EPA's and GE's sampling efforts to determine the amount of PCBs remaining in the river post-dredging were sufficient.

NYSDEC provided its sampling data to EPA in the spring of 2018 and published its analysis of the sampling results in December 2018.

33.     EPA has explicitly addressed the efficacy of the remedy in its Second Five-Year Review Report (the "Report"), issued on April 11, 2019 contemporaneous with the Certificate of Completion. In the Report, EPA did not find the remedial action protective of human health and the environment, and stated that it cannot make that determination until further information is obtained. Report, at 76. By its own admission, EPA believes eight or more years of post-dredging data on PCB concentrations in fish tissue are needed in order to determine whether the remedial action is protective of human health and the environment. *Id*.

34.     Specifically, in its Report, EPA acknowledged that the agency has insufficient data to determine whether PCB concentrations in fish will meet the short-term (five years post-dredging, or 2020) remedial action objective of the ROD at some point in the future. *Id*. Further, EPA has stated that it will take at least fifty years to reach the ROD's long-term remedial action objective for the protection of human health with regard to fish consumption, but the agency also cannot state with reasonable certainty that the long-term objective will in fact be met. *Id*.

35.     Further, EPA acknowledged in its Report that the remedial dredging left far more PCBs in river sediments than had been projected in the 2002 ROD (Report, at 44) and, therefore, in fish. EPA's evaluation of the data show that the remedy left behind approximately thirteen tons more PCB mass in the River than

the ROD anticipated. In total, approximately fifty-four tons of PCBs remain in the Upper River. *Compare id.*, at 5 *with* 2002 ROD, "Executive Summary," at ii.

36.     The State and Federal natural resource trustees– NYSDEC, the United States Department of the Interior, and the United States National Oceanic and Atmospheric Agency– have identified injuries to the following State and Federal natural resources: mink, land birds, fish, surface water, groundwater, and waterfowl caused by GE's PCB contamination of the Hudson River, as well as additional injuries caused by remediation. Because the remedy is not complete and not protective of human health and the environment, those resource injuries will persist indefinitely.

**D.  The State's Interests**

37.     The State's interests are presently harmed and adversely impacted by the Certificate of Completion because the Hudson River remains contaminated, notwithstanding GE's completion of the remedial work required by the Consent Decree. Trends in PCB concentrations in Hudson River fish and sediments have markedly failed to meet EPA's remedial action objectives to protect human health and the environment, and the Covenant Not to Sue legally restricts EPA's ability to require GE to implement additional remedial action. Recreational fishing and commercial fishing are directly affected, as are other uses of the Hudson River. For example, Fish Consumption Advisories remain in place for forty river miles of the selectively dredged Upper Hudson River, which recommend that no fish be eaten. Advisories also restrict fish consumption in approximately 150 river miles downstream of the Upper River. Because PCB concentrations in fish have not been

reduced to a safe level, the present restrictions for fish consumption will remain in place. Moreover, the Certificate of Completion also harms the residents of the State because it suggests to the public that all necessary remedial work is concluded and that fish are now safe to eat, when in fact the consumption of Hudson River fish contaminated with current levels of PCBs continues to present a known health risk.

## FIRST CLAIM FOR RELIEF
### (*Ultra Vires* Action)

38. The State repeats and re-alleges, as if fully set forth here, all allegations in paragraphs 1 through 37 above.

39. A covenant not to sue for remedial action under CERCLA must comply with the requirements of CERCLA Section 122(f). 42 U.S.C. § 9622(c)(1). CERCLA Section 122(f)(3) prohibits the EPA from issuing a covenant not to sue unless and until the agency certifies that a responsible party has completed the remedial action in accordance with CERCLA's requirements. 42 U.S.C. § 9622(f)(3). Among those requirements is the mandate that remedial action, upon completion, achieve a degree of cleanup that assures protection of human health and the environment. 42 U.S.C. § 9621(d)(1). Because the Consent Decree provides GE with the Covenant Not to Sue upon issuance of the Certificate of Completion, EPA must first make a finding that the remedial action implemented by GE to date, and to be implemented by GE in the future, under the Consent Decree is sufficient to protect human health and the environment before issuing the Certificate of Completion to GE.

40. However, EPA has not made a finding that the remedial action implemented and to be implemented by GE under the Consent Decree is sufficient

13

to protect human health and the environment from GE's contamination of the Hudson River with PCBs. In fact, EPA cannot find that the remedial action currently is protective, and cannot state with reasonable certainty that the action will be protective in the future.

41. By issuing the Certificate of Completion to GE without first finding the that remedial action implemented and to be implemented by GE will be protective of human health and the environment, EPA has acted contrary to the requirements of CERCLA Sections 121(d)(1), 122(c)(1), and 122(f)(3). 42 U.S.C. §§ 9621(d)(1), 9622(c)(1), 9622(f)(3).

42. Under the APA, courts must hold unlawful and set aside agency action that is "in excess of statutory jurisdiction, authority, or limitations or short of statutory right." 5 U.S.C. § 706(2)(C).

43. Because EPA has not found that the remedial action implemented and to be implemented by GE under the Consent Decree has or will achieve a degree of cleanup that assures protection of human health and the environment, as CERCLA requires, but nevertheless issued the Certificate of Completion to GE, EPA's issuance of the Certificate, from which the Covenant Not to Sue arises, is outside the scope of the agency's authority under CERCLA and is *ultra vires*. 5 U.S.C. § 706(2)(C).

## SECOND CLAIM FOR RELIEF
**(Arbitrary and Capricious Action Not in Accordance with Law)**

44. The State repeats and re-alleges, as if fully set forth here, all allegations in paragraphs 1 through 43 above.

45. Under the APA, courts must hold unlawful and set aside agency action that is "arbitrary, capricious ... or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

46. Presently, EPA has not found the Hudson River remedy implemented to date, and to be implemented in the future, under the Consent Decree to be protective of human health and the environment and concedes that it cannot determine whether that remedy is protective, as required by CERCLA. Nevertheless, EPA issued the Certificate of Completion to GE.

47. EPA's issuance of the Certificate was arbitrary, capricious, and otherwise not in accordance with law in that the agency failed to find the remedy protective of human health and the environment before issuing the Certificate of Completion to GE. 42 U.S.C. §§ 9621(d)(1), 9622(f)(3).

## PRAYER FOR RELIEF

WHEREFORE, the State respectfully requests that this Court enter judgment providing the following relief:

A. Declaring that EPA's issuance of the Certificate of Completion to GE without a corresponding finding that the remedial action is now, or will in the future be, protective of human health and the environment was without legal authority and *ultra vires*;

B. Declaring that EPA's issuance of the Certificate of Completion to GE was arbitrary, capricious, and otherwise not in accordance with law;

C. Declaring that the Certificate of Completion is void *ab initio*;

D. Declaring that the Covenant Not to Sue that arose upon EPA's issuance of the Certificate of Completion is a legal nullity;

E. Vacating the Certificate of Completion and remanding the matter to EPA to withhold re-issuance of a certificate of completion unless and until the agency makes a determination that the remedial action implemented and to be implemented by GE under the Consent Decree is protective of human health and the environment; and

F. Such further and additional relief as the Court deems necessary and proper.

Respectfully Submitted,

LETITIA JAMES
Attorney General of the
State of New York
Attorney for Plaintiffs
New York State Department of Law
120 Broadway
New York, New York 10271

**s/ Brittany M. Haner**
BRITTANY M. HANER
Bar Number: 700987
JAMES C. WOODS
Bar Number: 102843
*Assistant Attorneys General*
The Capitol
Albany, New York 12224
(518) 776-2389
Brittany.Haner@ag.ny.gov

Dated:   August 21, 2019
          Albany, New York