# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK ET AL., ) <br> ) <br>        Plaintiffs, ) <br> ) <br>    v. ) <br> ) <br> UNITED STATES ENVIRONMENTAL ) <br>    PROTECTION AGENCY ET AL., ) <br> ) <br>        Defendants. ) | Civil Action No. 1:19-cv-01029-DNH-CFH |

## GENERAL ELECTRIC COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE AS DEFENDANT

Samuel I. Gutter*
10e Cape Codder Road
Falmouth, MA 02540
(508) 540-0180
sgutter@outlook.com

Eric S. Merrifield*
Executive Counsel
General Electric Company
P.O. Box 2049
Poulsbo, WA 98370
(518) 527-5140
eric.merrifield@ge.com

Dean S. Sommer
Kristin Carter Rowe
YOUNG/SOMMER LLC
Five Palisades Drive
Albany, NY 12205
(518) 438-9907
dsommer@youngsommer.com

James R. Bieke*
Timothy K. Webster*
SIDLEY AUSTIN, LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
jbieke@sidley.com
twebster@sidley.com

*Attorneys for Movant for Intervention General Electric Company*
*( \* Application for admission pro hac vice pending)*

Dated:  September 23, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND .....................................................................................................................2

    A.    The Consent Decree ...................................................................................3

    B.    Performance of the Remedial Action .........................................................4

    C.    Facts Relating to the Certification of Completion .....................................5

ARGUMENT ...........................................................................................................................8

POINT I:  GE IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT UNDER RULE 24(a)(2) ................................................................................................................................8

    A.    GE's Motion to Intervene is Timely ...........................................................8

    B.    GE Has Direct, Substantial and Legally Protectable Interests at Stake ......9

    C.    Disposition of the Action May Impair or Impede GE's Ability to Protect its Interests .................................................................................................10

    D.    EPA Cannot Adequately Represent GE's Interests ..................................11

    E.    GE Has Standing to Intervene ..................................................................12

POINT II:  ALTERNATIVELY, GE SHOULD BE PERMITTED TO INTERVENE UNDER RULE 24(b)(1)(B) ...................................................................................................13

CONCLUSION ......................................................................................................................14

ATTACHMENT A:  Excerpts from Consent Decree in *United States v. General Electric Co.* (N.D.N.Y., entered Nov. 2, 2006)

ATTACHMENT B:  Press Release of New York Attorney General announcing lawsuit against EPA (Aug. 21, 2019)

**TABLE OF AUTHORITIES**

**Case Law**

*Berger v. Heckler*,
  771 F.2d 1556 (2d Cir. 1985) ................................................................................9

*Brennan v. N.Y.C. Bd. of Educ.*,
  260 F.3d 123 (2d Cir. 2001).............................................................................9, 11

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001)................................................................................11

*CARS (Citizens Against Retail Sprawl) v. U.S. Army Corps. of Engineers*,
  No. 04-cv-0328E(Sr), 2007 WL 2778605 (W.D.N.Y. Sep. 18, 2007) ..............11-12

*Citizens Against Casino Gambling in Erie Cty. v. Hogen*,
  417 F. App'x 49 (2d Cir. 2011) ..........................................................................13

*Farmland Dairies v. Commissioner of New York State Dep't of
  Agriculture and Markets*,
  847 F.2d 1038 (2d Cir. 1988)..............................................................................11

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*,
  471 F.3d 377 (2d Cir. 2006)..................................................................................8

*New York v. Reilly*,
  143 F.R.D. 487 (N.D.N.Y. 1992) .......................................................................13

*New York Public Interest Research Group, Inc. v. Regents of
  University of State of New York*,
  516 F.2d 350 (2d Cir. 1975).........................................................................11, 12

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
  No. 5:09-cv-00471, 2010 WL 1838982 (N.D.N.Y. May 6, 2010) ....................9, 11

*Olin Corp. v. Lamorak Ins. Co.*,
  325 F.R.D. 85 (S.D.N.Y. 2018) ...........................................................................9

*Town of Chester v. Laroe Estates, Inc.*,
  137 S. Ct. 1645 (2017).......................................................................................12

*Town of Fort Edward v. United States*,
  No. 06-5535-cv (2d Cir. Jan. 3, 2008). .............................................................1, 4

*Trbovich v. United Mine Workers of America*,
  404 U.S. 528 (1972) ............................................................................................... 11

*United States v. Armour & Co.*,
   402 U.S. 673 (1971) ............................................................................................... 9

*United States v. City of Niagara Falls*,
   103 F.R.D. 164 (W.D.N.Y. 1984) ......................................................................... 12

*United States ex rel. Rubar v. Hayner Hoyt Corp.*,
   306 F. Supp. 3d 478 (N.D.N.Y. 2018) .................................................................... 8

*United States v. General Electric Co.*,
   460 F. Supp. 2d 395 (N.D.N.Y. 2006). ............................................................. 1, 3

*United States v. ITT Continental Baking Co.*,
   420 U.S. 223 (1975) ............................................................................................... 9

*United States v. Pitney Bowes, Inc.*,
   25 F.3d 66 (2d Cir. 1994) ................................................................................. 8, 13

*Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d Cir. 1990) .................................................................................... 9

**Statutes**

Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*. ............................... 1, 7

Comprehensive Environmental Response, Compensation, and Liability Act
   (CERCLA), 42 U.S.C. § 9601 *et seq*. ................................................................... 2

CERCLA § 121(c), 42 U.S.C. § 9621(c) ................................................................... 6

**Federal Rules of Civil Procedure**

Rule 24(a)(2) ................................................................................................ 1, 8, 12, 14

Rule 24(b)(1)(B) ................................................................................................ 1, 13, 14

**PRELIMINARY STATEMENT**

The General Electric Company ("GE") submits this memorandum in support of its unopposed motion for leave to intervene as of right as a defendant in this action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure ("FRCP") or, alternatively, to intervene permissively as a defendant pursuant to FRCP 24(b)(1)(B).

In this action, the State of New York, the New York State Department of Environmental Conservation ("NYSDEC"), and NYSDEC Commissioner Basil Seggos (collectively "the State") have sued the United States Environmental Protection Agency ("EPA") and its Administrator under the Administrative Procedure Act ("APA"). The State's action challenges and seeks to set aside a Certification of Completion EPA issued to GE for the remedial action that GE implemented in the Upper Hudson River (involving dredging of the river sediments) pursuant to the terms of a Consent Decree executed by GE and the United States in 2005, which this Court approved and entered in 2006. *United States v. General Electric Co.*, 460 F. Supp. 2d 395 (N.D.N.Y. 2006), *aff'd sub nom. Town of Fort Edward v. United States*, No. 06-5535-cv (2d Cir. Jan. 3, 2008). As this Court observed, the Consent Decree is "a long and detailed compromise for remediation of the PCB-laden Hudson River reached after lengthy negotiations between the EPA and GE." 460 F. Supp. at 402.

The Consent Decree provides GE with a clear right to receive a Certification of Completion from EPA upon GE's completion of the Remedial Action in accordance with the Consent Decree, which is indisputably the case here. The Certification of Completion, in turn, triggers a covenant by the United States not to sue GE, as described in the Decree.

GE has a direct, substantial, and legally protectable interest in enforcing and upholding the terms of the Consent Decree. In reliance on that Decree, GE spent ***more than $1.7 billion*** to

implement the EPA-selected, State-endorsed dredging remedy in the Upper Hudson River over a period of more than seven years (2009-2016), with every step approved by EPA.  Given GE's completion of that remedy, EPA had a non-discretionary duty under the Consent Decree to issue the Certification of Completion, which serves as EPA's verification that GE completed the required work in full compliance with the Consent Decree.  The State asks this Court to revoke that Certification and with it, the United States' covenant not to sue.  GE's right to protect its interests in the Consent Decree and in the Certification of Completion is therefore compelling and beyond question.

Accordingly, GE seeks to intervene in order to: (1) defend and enforce the terms of the Court-approved Consent Decree; (2) protect its rights and protections under the Consent Decree and its interest in the Certification of Completion; and (3) present arguments against the State's challenge to EPA's issuance of the Certification of Completion.  Both the State and the Federal Government have advised GE that they do not oppose GE's intervention.  Thus, GE respectfully requests that the Court grant GE leave to intervene in this action as a matter of right or, alternatively, with the Court's permission.

## BACKGROUND

This section presents the relevant background for GE's motion.  The pertinent provisions of the Consent Decree ("CD") are set forth in Attachment A, and the background facts are described in the accompanying Affidavit of John G. Haggard, dated September 19, 2019 ("Haggard Aff.")

In 2002, EPA issued a Record of Decision ("ROD") for the Hudson River PCBs Superfund Site ("Site") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*.  That ROD announced EPA's selection of a Remedial

Action involving the dredging and disposal of sediments from the Upper Hudson River (between Fort Edward and the Federal Dam at Troy) containing polychlorinated biphenyls ("PCBs") above certain specified numerical criteria.  460 F. Supp. 2d at 397; Haggard Aff. ¶ 3.[1]  GE and EPA subsequently executed two Administrative Orders on Consent, under which GE conducted extensive sediment sampling to determine the areas to be dredged and performed the necessary remedial design activities for the remedy.  460 F. Supp. 2d at 398; Haggard Aff. ¶ 5.

### A.     The Consent Decree

In 2005, GE executed a Consent Decree with the United States under CERCLA.  As provided in the ROD, the Consent Decree called for the Remedial Action specified in the ROD to be conducted in two phases; Phase 1 was to constitute the first year of the dredging project, to be performed for evaluation purposes, and Phase 2 was to constitute the remainder of the dredging project.  In the Decree, GE committed to perform Phase 1 of the Remedial Action and agreed that, after a post-Phase 1 peer review and EPA's decision on any changes to the project for Phase 2, GE would elect whether to perform Phase 2 – which GE subsequently elected to do.  *See* CD ¶¶ 12-15; *see also* 460 F. Supp. 2d at 399; Haggard Aff. ¶ 8.

In return, the Consent Decree provided that, when GE has demonstrated that the Remedial Action has been performed in accordance with the Consent Decree, "EPA will so certify in writing" to GE,[2] and that "[t]his certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree including, but not limited to, Section

---

[1] The State of New York concurred in EPA's selected remedy, joining EPA in concluding that the remedy would protect human health and the environment.  Haggard Aff. ¶ 4.

[2] For this purpose, the Consent Decree defines the "Remedial Action" as excluding post-construction operation, maintenance, and monitoring (OM&M).  CD ¶ 4.

XXI (Covenants Not to Sue by Plaintiff)." CD ¶ 57.d.[3] EPA's issuance of the Certification puts into effect the United States' covenant not to sue in Paragraph 98.f of the Decree. CD ¶ 99.b. This was a negotiated exchange of the sort found in virtually every consent decree in which a private party agrees with EPA to implement a cleanup.

The Consent Decree also contains covenant "reopener" provisions that empower EPA to require further response action by GE in defined circumstances, even after the covenant not to sue is in effect. CD ¶ 101.[4] However, those reopener provisions do not affect GE's entitlement to a Certification of Completion once it has performed the Remedial Action in accordance with the Consent Decree.

Following briefing and a hearing, the Court approved and entered the Consent Decree on November 2, 2006.[5]

### B. Performance of the Remedial Action

In accordance with the Consent Decree, GE carried out Phase 1 of the dredging project in 2009, with completion of the associated restoration of the affected habitat in 2011. Haggard Aff.

---

[3] The Consent Decree includes no other preconditions for issuance of the Certification of Completion apart from a showing that GE completed the Remedial Action in accordance with the Decree. It also provides that, in determining whether the Remedial Action is complete, EPA cannot require GE to perform activities that would expand the scope of the remedy selected in the ROD or required by the Consent Decree. CD ¶ 57.c.(1).

[4] Those circumstances are that new information or conditions are discovered in the future which, together with other relevant information, indicate that the Remedial Action is not protective of human health or the environment. CD ¶ 101.b.

[5] The State – which had participated in the Consent Decree negotiations (Haggard Aff. ¶ 7) – did not challenge the entry of the Consent Decree in Court. In fact, only one party, the Town of Fort Edward, challenged the Consent Decree in Court, and that challenge was on grounds not relevant here. This Court rejected that challenge in the above-cited decision, and that decision was upheld on appeal by the Second Circuit. *Town of Fort Edward v. United States*, No. 06-5535-cv (2d Cir. Jan. 3, 2008).

¶ 12.[6]  In December 2010, following a post-Phase 1 peer review and EPA's issuance of revised performance standards, GE agreed to perform Phase 2 of the Remedial Action under the Consent Decree. *Id.* GE performed Phase 2 of the Remedial Action between 2011 and 2015, with final completion of the required habitat restoration in 2016. *Id.* ¶ 14.  Each step of the Remedial Action was specifically approved by EPA – some 300 approvals across the project – as having been conducted in accordance with the applicable requirements under the Consent Decree.[7]  Moreover, as required by Paragraph 45 of the Consent Decree, EPA provided the State an opportunity to review and comment on each one of GE's submissions to EPA prior to that Agency's approval. Haggard Aff. ¶ 15.  All told, GE incurred more than $1.7 billion in implementing the EPA-selected remedy.  *Id.* ¶ 16.

### C. Facts Relating to the Certification of Completion

On December 23, 2016, following completion of the Remedial Action, GE submitted a Remedial Action Completion Report to EPA requesting issuance of the Certification of Completion in accordance with the terms of the Consent Decree.  *Id.* ¶ 17.

As discussed above, the Consent Decree provided explicitly that if EPA concludes that "the Remedial Action has been performed in accordance with this Consent Decree," EPA "will" issue

---

[6]  In accordance with Paragraph 56.e of the Consent Decree, EPA issued a Certification of Completion of Phase 1 on October 17, 2012.  Haggard Aff. ¶ 13.

[7]  The areas to be dredged by GE were divided into a total of 100 individual areas, known as Certification Units ("CUs").  Haggard Aff. ¶ 6.  GE and EPA followed a three-step process for conducting and documenting the necessary work in each CU: (1) dredging; (2) placement of backfill or caps; and (3) where necessary, restoration of the affected habitat.  *Id.* ¶ 9.  In accordance with a procedure established in the CD, EPA approved GE's completion of each of these three steps in each of the 100 CUs through its signature on a set of approval forms.  *Id.* ¶ 15.  Together, EPA's signed approval forms constituted EPA's acknowledgement that GE completed all of the required work in accordance with the Consent Decree requirements.

the Certification of Completion. CD ¶ 57.d.[8] As also noted above, there are no other preconditions for issuance of the Certification.

On January 2, 2018, EPA advised GE that, prior to responding to GE's request for Certification, EPA expected to finalize a separate and distinct periodic remedy review report, known as the Second Five-Year Review Report (which EPA had issued in draft on June 1, 2017), and that finalizing that report was taking longer than anticipated. Haggard Aff. ¶ 19. That Five-Year Review Report is required by a separate and unrelated provision of CERCLA requiring EPA to evaluate remedial actions at five-year intervals from initiation to ensure that they are protective of human health and the environment. CERCLA § 121(c), 42 U.S.C. § 9621(c). As part of its OM&M obligations under the Consent Decree, GE continues to engage in extensive monitoring, providing information that EPA can consider in future five-year reviews.

As a legal and contractual matter, the Five-Year Review has no connection to EPA's issuance of a Certification of Completion for the Hudson River Remedial Action. Under the Consent Decree, the *only* relevant inquiry for issuance of the Certification is whether GE has completed the Remedial Action in accordance with the Consent Decree. The Five-Year Review constitutes a wholly separate periodic assessment – one that will be repeated *ad infinitum* at five-year intervals – of whether the remedy is working to protect human health and the environment.

During the following year, EPA continued to work on the Five-Year Review Report and to review GE's Remedial Action Completion Report. It also collaborated with the New York State Department of Environmental Conservation ("NYSDEC") in an extensive technical review of

---

[8] The Consent Decree set a timetable for EPA's response as 365 days after receipt of GE's request for the Certification of Completion. CD ¶ 57.e.

sediment samples collected from the river by both GE and NYSDEC following the completion of dredging, as well as post-dredging fish sampling data.  Haggard Aff. ¶ 20.

On December 26, 2018, EPA provided comments to GE on the Remedial Action Completion Report.  Those comments were minor; they did not require GE to conduct any additional work and did not in any way question GE's documentation that it had completed the Remedial Action in accordance with the Consent Decree.  *Id*. ¶ 21.  GE then revised the report to address those comments, and it submitted an updated Remedial Action Completion Report to EPA on March 6, 2019, along with a reiteration of GE's request for EPA to issue a Certification of Completion.  *Id*.

On April 11, 2019, EPA issued a Certification of Completion to GE.  In that Certification, EPA "certifie[d] that the activities comprising the Remedial Action, as specifically defined [in the Consent Decree], have been performed in accordance with the Consent Decree."  *Id*. ¶ 22 and Exhibit B.

On the same date, although there is no legal or contractual connection between the two, EPA issued a final Second Five-Year Review Report.  *Id*. ¶ 23.  In that document, EPA confirmed that the construction portion of the remedy had been completed, and explained that the project had now entered the OM&M stage in which monitoring data will be collected over time to continue to evaluate the effectiveness of the remedy.  *Id*.

On August 21, 2019, the State commenced this action against EPA under the APA, alleging that EPA's issuance of the Certification of Completion was unlawful as in excess of its authority under CERCLA and was arbitrary, capricious, and otherwise not in accordance with law.  It thus seeks a declaration that the Certification is void and an order vacating the Certification.

## ARGUMENT

### POINT I
### GE IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT UNDER RULE 24(a)(2).

Rule 24(a)(2) of the FRCP provides that, "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Thus, intervention as of right under Rule 24(a)(2) must be granted upon a demonstration that "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006). *See also United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994); *United States ex rel. Rubar v Hayner Hoyt Corp.*, 306 F. Supp. 3d 478, 490 (N.D.N.Y. 2018). GE clearly meets these criteria.

    A.    **GE'S Motion to Intervene is Timely.**

In determining the timeliness of a motion to intervene, courts consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Pitney Bowes, Inc.*, 25 F.3d at 70. Given that GE has moved to intervene in this action approximately one month after the State's commencement of this action, before any responsive pleadings have been filed by the

8

existing parties and before any substantive motions have been submitted, it readily satisfies the timeliness requirement.[9] The absence of prejudice to the parties is further demonstrated by their lack of opposition to GE's intervention.

### B. GE Has Direct, Substantial and Legally Protectable Interests at Stake.

Rule 24(a)(2) requires that the putative intervenor have "an interest relating to the property or transaction that is the subject of the action." *See Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001); *Niagara Mohawk Power Corp.*, 2010 WL 1838982, at *2. The relevant interest must be "direct, substantial, and legally protectable." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).

GE clearly has a direct, substantial, and legally protectable interest in the subject of this lawsuit. The State challenges the Certification of Completion issued to GE by EPA pursuant to the Court-approved Consent Decree. The Consent Decree was both a binding contract between the parties and a judicial order. *See, e.g., Berger v. Heckler*, 771 F.2d 1556, 1567 (2d Cir. 1985).[10] The issuance of that Certification – after GE completed the ROD-selected Remedial Action in accordance with the Consent Decree – was an essential component of GE's agreement with the United States, as embodied in the Consent Decree, upon which GE relied in spending more than $1.7 billion to implement the EPA-selected Remedial Action and which is binding on EPA.

---

[9] *See, e.g., Olin Corp. v. Lamorak Ins. Co.,* 325 F.R.D. 85, 88 (S.D.N.Y. 2018) ("As an initial matter, courts have found motions to intervene timely where, as here, these motions were brought a 'few months' after the claims."); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, No. 5:09-cv-00471, 2010 WL 1838982, at *2 (N.D.N.Y. May 6, 2010) (motion to intervene was timely even though it was brought five months after action commenced where there was no evidence of any prejudice to the parties).

[10] It is well settled that a consent decree should be interpreted as a contract without reference to the underlying litigation or the parties' purposes or any other matters outside the decree's "four corners." *See, e.g., United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236-37 (1975); *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971).

Moreover, the issuance of that Certification triggers the United States' covenant not to sue in the Consent Decree, which was another critical component of GE's agreement in that Decree. The State's legal challenge to the issuance of the Certification, if successful, would drastically and materially alter the bargained-for terms of the Consent Decree and eliminate a key protection provided to GE in that agreement.

In short, as the recipient and intended beneficiary of the Certification and as a party to the exhaustively negotiated and Court-approved Consent Decree, pursuant to which the Certification was issued, GE readily satisfies the second prong of the test for intervention as of right.

### C. Disposition of the Action May Impair or Impede GE's Ability to Protect its Interests.

The third prong of the intervention test addresses whether GE is so situated that disposition of the action may, as a practical matter, impair or impede GE's ability to protect its interests. GE also readily satisfies this third prong of the test. If the Court grants the relief requested by the State in this action (i.e., vacatur of the Certification of Completion), such a ruling would directly and substantially impact GE's rights to the Certification under the terms of the Consent Decree, which was thoroughly negotiated between GE and EPA and approved by the Court after a full and complete review. It would also impact GE's interests by eliminating the protections that GE received in the Consent Decree, including the covenant not to sue (subject to the reopener provisions of the Decree).[11]

---

[11] Indeed, the New York Attorney General's press release announcing the commencement of this lawsuit makes clear that the State's intent in bringing this action is directly aimed at GE – specifically, to force EPA to "require GE to truly complete its PCB cleanup." Attachment B.

### D. EPA Cannot Adequately Represent GE's Interests.

The fourth and final prong of the intervention test is whether EPA will adequately represent GE's interests. The test is not whether EPA will argue effectively on behalf of GE, but rather whether EPA's interests are "so similar to those of [GE] that adequacy of representation [is] assured." *Brennan*, 260 F.3d at 132-133.

To show an absence of adequate representation by an existing party, an applicant for intervention need only show that the existing party's representation of its interests "may be" inadequate, not that it will be inadequate. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972). Generally, the burden of demonstrating inadequacy of the existing party's representation is "minimal*.*" *Id.; Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001)*.* Accordingly, if "there is sufficient doubt about the adequacy of representation," then intervention should be granted. *Trbovich*, 404 U.S. at 538.

It is established through ample case law that, even where the interests of a private party seeking intervention and those of a government agency are aligned, the government agency does not adequately represent the private party. The main reason for this is that the government agency is charged with acting in the interest of the general public, whereas the private party is seeking to protect a narrower and more focused interest and thus cannot be considered to be adequately represented by the government agency. *See, e.g.*, *Farmland Dairies v. Commissioner of New York State Dep't of Agriculture and Markets*, 847 F.2d 1038, 1044 (2d Cir. 1988); *New York Public Interest Research Group, Inc. v. Regents of University of State of New York*, 516 F.2d 350, 352 (2d Cir. 1975); *Niagara Mohawk Power Corp.*, 2010 WL 1838982, at *3; *CARS (Citizens Against Retail Sprawl) v. U.S. Army Corps. of Engineers,* No. 04-cv-0328E(Sr), 2007 WL 2778605, at *3

(W.D.N.Y. Sept. 18, 2007); and *United States v. City of Niagara Falls*, 103 F.R.D. 164, 166 (W.D.N.Y. 1984).

These principles apply in the present action. While EPA has an interest in defending its Certification of Completion, it also has broader interests involving policy and precedent that GE does not necessarily share. These broader interests may also affect positions that EPA might adopt in this case, or its willingness to consider compromises that might not fully protect GE's contractual, negotiated rights under the Consent Decree or its financial interests. Moreover, GE's private interests in enforcing the Consent Decree and obtaining the benefit of its settlement with EPA may lead GE to raise different arguments from those raised by EPA. *Cf. New York Public Interest Research Group*, 516 F.2d at 352 (noting the likelihood that individual pharmacists "will make a more vigorous presentation of the economic side of the argument" than would the State).

In short, for purposes of intervention, EPA will not adequately represent GE's interests.

### E.  GE Has Standing to Intervene.

In addition to the requirements for intervention as of right as set forth in Rule 24(a)(2), the Supreme Court has held that a litigant seeking such intervention under Rule 24(a)(2) must meet the requirement for standing under Article III of the U.S. Constitution, at least if the intervenor wishes to pursue relief not requested by a plaintiff. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017). In this case, because GE is seeking to intervene as a defendant, it is not requesting any affirmative relief, much less relief not requested by the State, and thus has no burden to establish standing. Nevertheless, to the extent that a showing of standing is necessary here, GE clearly has a sufficient stake in the outcome of this case to have standing to intervene to oppose the State's claims, for the same reasons given in Sections I.B and I.C. *See Town of Chester,* 137 S. Ct. at 1650; and *see generally* Haggard Aff. As shown above, a decision in the State's favor

revoking the Certification of Completion issued to GE would have a direct, concrete, and substantial adverse impact on GE by removing its negotiated rights and protections under the Consent Decree. That is more than sufficient to give GE standing to intervene if such a showing should be deemed necessary.

## POINT II
## ALTERNATIVELY, GE SHOULD BE PERMITTED TO INTERVENE UNDER RULE 24(b)(1)(B).

Under Rule 24(b)(1)(B), the Court has the discretion, "[o]n timely motion," to "permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention under Rule 24(b) should be "liberally construed." *New York v. Reilly*, 143 F.R.D. 487, 490 (N.D.N.Y. 1992).

"The principal guide in deciding whether to grant permissive intervention is 'whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes, Inc.*, 25 F.3d at 73 (*quoting* former Rule 24(b)(2)). "Additional relevant factors include the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Citizens Against Casino Gambling in Eerie Cty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (quotation marks omitted).

All of these factors weigh in favor of granting GE permissive intervention. GE clearly has a defense that shares common questions of law or fact with the main action, because GE seeks to uphold the Certification being challenged. Moreover, GE's motion is timely, such that intervention will not unduly delay or prejudice the adjudication of the rights of the original parties; indeed, those parties do not oppose GE's intervention. Further, GE has a direct interest in this

action, as shown above; and, as the party responsible for the implementation of the Remedial Action, its participation will contribute to a full development of any factual issues and to the just and equitable adjudication of the legal questions presented.

## CONCLUSION

For all of the foregoing reasons, GE respectfully requests that this Court grant its motion to intervene as of right under Rule 24(a)(2), or, alternatively, its motion for permissive intervention under Rule 24(b)(1)(B).

Respectfully Submitted,

/s/ Dean S. Sommer
Dean S. Sommer
Kristin Carter Rowe
YOUNG/SOMMER LLC
Five Palisades Drive
Albany, NY 12205
(518) 438-9907
dsommer@youngsommer.com
krowe@youngsommer.com

Samuel I. Gutter*
10e Cape Codder Road
Falmouth, MA 02540
(508) 540-0180
sgutter@outlook.com

Eric S. Merrifield*
Executive Counsel
General Electric Company
P.O. Box 2049
Poulsbo, WA 98370
(518) 527-5140
eric.merrifield@ge.com

James R. Bieke*
Timothy K. Webster*
SIDLEY AUSTIN, LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
jbieke@sidley.com
twebster@sidley.com

*Attorneys for Movant for Intervention General Electric Company*
*(\* Application for admission pro hac vice pending)*

Dated:  September 23, 2019

14