IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al., | ) |
| | ) |
| Plaintiffs, | ) Case No. 1:19-cv-01029-DNH-CFH |
| | ) |
| v. | ) |
| | ) |
| U.S. ENVIRONMENTAL | ) |
| PROTECTION AGENCY, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
BY U.S. ENVIRONMENTAL PROTECTION AGENCY,
AND ANDREW WHEELER, EPA ADMINISTRATOR**

JONATHAN D. BRIGHTBILL
*Principal Deputy Assistant Attorney General*
Meghan E. Greenfield
Sarah Buckley
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7411
Washington, D.C. 20044
(202) 514-2795
Of Counsel:                                    Meghan.Greenfield@usdoj.gov

James Bove                                    GRANT C. JAQUITH
Lauren Charney                                United States Attorney
Paul Simon                                    Northern District of New York
*Attorneys*                                   JOHN D. HOGGAN, JR.
U.S. Environmental Protection Agency          Assistant United States Attorney
                                              Bar Roll No. 51125
                                              James T. Foley U.S. Courthouse
                                              445 Broadway, Room 218
                                              Albany, NY 12207

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

    A.    Statutory and Regulatory Background. .................................................. 3

ARGUMENT ..................................................................................................... 7

I.    The State Cannot Bring Claims in a New Suit Challenging the
Terms of the Consent Decree or Its Implementation. ....................................... 7

    A.    The Consent Decree Is Binding on EPA and GE, and
Operates as a Court Order with the Force of Law................................. 8

        1.    The State cannot assert that the Consent Decree is
inconsistent with CERCLA. ........................................................ 10

        2.    Nor can the State seek to enforce any of the
Consent Decree's requirements in this suit.............................. 12

II.    The State Cannot Bring Claims Under the APA Because It Had
an Adequate Remedy at Law.......................................................................... 13

III.    The State Has Failed to State a Claim Because the Consent
Decree Unambiguously Allowed for Issuance of the Certification,
and the Certification Is Consistent With CERCLA. ....................................... 15

    A.    EPA Was Required to Issue the Certification to GE Under
the Unambiguous Terms of the Consent Decree................................. 16

        1.    CERCLA's definition of remedial action is
consistent with the Consent Decree's definition of
the same term. ........................................................................ 18

        2.    The Consent Decree's contingent release of liability
is consistent with CERCLA........................................................ 20

CONCLUSION................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Amalgamated Sugar Co. v. NL Indus., Inc.*,
   825 F.2d 634 (2d Cir. 1987) ........................................................................ 9, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 6

*Berger v. Heckler*,
   771 F.2d 1556 (2d Cir. 1985) ......................................................................... 7

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ....................................................................................... 12

*Bryant v. N.Y. State Educ. Dep't*,
   692 F.3d 202 (2d Cir. 2012) ........................................................................... 15

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*,
   897 F.3d 75 (2d Cir. 2018) .............................................................................. 6

*Crumpton v. Bridgeport Educ. Ass'n*,
   993 F.2d 1023 (2d Cir. 1993) ..................................................................... 7, 16

*Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*,
   451 F.3d 295 (2d Cir. 2006) ........................................................................... 7

*Envtl. Integrity Project v. EPA*,
   160 F. Supp. 3d 50 (D.D.C. 2015) .................................................................. 14

*Febres v. City of New York*,
   238 F.R.D. 377 (S.D.N.Y. 2006) .................................................................... 13

*Firefighters Local Union No. 1784 v. Stotts*,
   467 U.S. 561 (1984) ..................................................................................... 8, 10

*Frew ex rel. Frew v. Hawkins*,
   540 U.S. 431 (2004) ..................................................................................... 9, 11

*Grace v. Bank Leumi Tr. Co. of N.Y.*,
   443 F.3d 180 (2d Cir. 2006) ........................................................................... 12

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009) .............................................................................. 6

*Holiday v. Martinez,*
    68 F. App'x 219 (2d Cir. 2003) ................................................................. 13

*Keiler v. Harlequin Enters. Ltd.,*
    751 F.3d 64 (2d Cir. 2014) ................................................................. 7, 15

*L-7 Designs, Inc. v. Old Navy, LLC,*
    647 F.3d 419 (2d Cir. 2011) ................................................................. 6, 9

*Maniolos v. United States,*
    741 F. Supp. 2d 555 (S.D.N.Y. 2010) ....................................................... 7

*Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak,*
    567 U.S. 209 (2012) ................................................................. 13

*Niagara Mohawk Power Corp. v. FERC,*
    306 F.3d 1264 (2d Cir. 2002) ........................................................ 13, 14

*SEC v. Prudential Sec., Inc.,*
    136 F.3d 153 (D.C. Cir. 1998) ................................................................. 12

*United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cty.,*
    712 F.3d 761 (2d Cir. 2013) ................................................................. 11

*United States v. Bestfoods,*
    524 U.S. 51 (1998) ................................................................. 3

*United States v. Gen. Elec. Co.,*
    460 F. Supp. 2d 395 (N.D.N.Y. 2006) ....................................... 4, 8, 10, 11

*Wojchowski v. Daines,*
    498 F.3d 99 (2d Cir. 2007) ................................................................. 7, 18

## Statutes

5 U.S.C. § 704 ................................................................. 13

42 U.S.C. § 9601(23) ................................................................. 3

42 U.S.C. § 9601(24) ................................................... 3, 4, 18, 19

42 U.S.C. § 9601(25) ................................................................. 3

42 U.S.C. § 9604 ................................................................. 3

42 U.S.C. § 9604(c) ................................................................................. 19

42 U.S.C. § 9620(e) ................................................................................. 19

42 U.S.C. § 9622(a) ............................................................................. 4, 21

42 U.S.C. § 9622(f)(3) ......................................................................... 4, 21

## Federal Registers

52 Fed. Reg. 2923 (Exec. Order No. 12,580) (Jan. 23, 1987) ...................... 3

70 Fed. Reg. 59,771-01 (Oct. 13, 2005) ...................................................... 4

## Rules

Fed. R. Civ. P. 60(b)(5) ........................................................................... 11

Fed. R. Civ. P. 60(c)(1) ........................................................................... 11

## INTRODUCTION

Thirteen years ago, this Court entered a Consent Decree resolving certain of the United States' claims (on behalf of the U.S. Environmental Protection Agency) against General Electric (GE) regarding PCB contamination of the Hudson River. The Consent Decree was the product of years of negotiations, and was subject to extensive public comment. In entering the Decree, this Court evaluated the Comprehensive Environmental Response, Compensation, and Liability Act's (CERCLA) substantive requirements, and determined that the Consent Decree was fair and consistent with that statute. The Consent Decree now constitutes a binding final judgment. It definitively establishes EPA's and GE's legal obligations, and neither party can unilaterally deviate from the Consent Decree's terms.

The State of New York participated in the Consent Decree negotiations, but it made a considered decision not to participate as a party in the United States' lawsuit, and not to formally object to entry of the Consent Decree. Now, more than a decade later, the State has dramatically changed course. It alleges that EPA acted unlawfully in granting GE a Certification of Completion of the Remedial Action under the Consent Decree without first making a finding that the Remedial Action is protective.

The State's claims are wholly contrary to the unambiguous terms of the Consent Decree. The Consent Decree—which again, is a binding judgment reflecting CERCLA's requirements—does not require that EPA make a protectiveness finding at this juncture. The Consent Decree provides that once GE

completed the "Remedial Action," as that term is defined by the Decree, then EPA must issue GE a "Certification of Completion of the Remedial Action." Here, GE in fact completed the "Remedial Action" that was required by the Decree. The State concedes as much in its Complaint. As such, the Decree mandated that EPA issue GE the Certification of Completion. If it had not done so, EPA would have been in violation of this Court's order.

The State nevertheless argues here that EPA violated the law. It advances its claims not in the Consent Decree proceeding as is required by the governing law, but in a new lawsuit brought under the Administrative Procedure Act (APA). This it cannot do. The State's opportunity to argue that a protectiveness determination was required before the Certification could be issued, or otherwise challenge the terms of the Consent Decree, was in the original Consent Decree proceeding at the time the Decree was entered. The State cannot now employ the APA to collaterally attack the Consent Decree as inconsistent with CERCLA. And, to the extent the State might argue that it is seeking to enforce requirements of the Consent Decree, such a motion can only be brought by a party in the Consent Decree proceeding.

The State seeks to invoke the APA to avoid longstanding principles governing implementation and enforcement of consent decrees. But, the APA does not provide a catch-all cause of action for dilatory parties who failed to avail themselves of their rights under other statutes.

Setting all this aside, the State's allegations fail to state a claim that EPA violated the law here. Again, the unambiguous terms of the Consent Decree

required EPA to issue the Certification of Completion to GE. As a result, EPA cannot have acted unlawfully in taking this required step. Moreover, the Consent Decree is consistent with CERCLA. The State has thus failed to state a claim that EPA violated CERCLA because the Consent Decree's terms are consistent with CERCLA. For all of these reasons, this Court should dismiss the Complaint with prejudice.

## BACKGROUND

### A.    Statutory and Regulatory Background.

In 1980, Congress enacted CERCLA, 42 U.S.C. §§ 9601-75, to provide a mechanism for the prompt and efficient cleanup of hazardous waste sites. *See United States v. Bestfoods*, 524 U.S. 51, 55 (1998). CERCLA authorizes the President to take action to respond to a release or substantial threat of release of any hazardous substance. 42 U.S.C. § 9604. The President has delegated some of that authority to EPA. *See* 52 Fed. Reg. 2923 (Exec. Order No. 12,580) (Jan. 23, 1987).

EPA can clean up releases by performing "removal" or "remedial actions," collectively termed "response" actions. 42 U.S.C. § 9601(23)-(25). "Removal action" is defined to include "the cleanup or removal of released hazardous substances from the environment," as well as actions "necessary to monitor, assess, and evaluate the release" of hazardous substances. *Id*. § 9601(23). "Remedial action" is defined to include, *inter alia*, "actions consistent with permanent remedy taken instead of or in

addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment." *Id.* § 9601(24).

CERCLA further provides that "[w]henever practicable and in the public interest, as determined by the President, the President shall act to facilitate agreements under this section that are in the public interest and consistent with the National Contingency Plan in order to expedite effective remedial actions and minimize litigation." § 9622(a). Along with the authority to enter settlements, CERCLA also allows EPA to provide covenants not to sue potentially responsible parties. Moreover, section 9622(f)(3) of CERCLA states, in the case of certain settlements for cleanup work, that a covenant not to sue for future liability "shall not take effect" until EPA "certifies that remedial action has been completed in accordance" with CERCLA.

### B.    Factual Background.

This Court entered the Consent Decree between the United States and GE in November of 2006. *United States v. Gen. Elec. Co.*, 460 F. Supp. 2d 395 (N.D.N.Y. 2006), *aff'd Town of Fort Edward v. United States*, No. 06-5535-cv (2d Cir. Jan. 3, 2008). The United States and GE negotiated the terms of the decree over several years. *Id.* The decree was then subject to public comment. 70 Fed. Reg. 59,771-01 (Oct. 13, 2005). The State participated in these negotiations and filed a letter as amicus curiae addressing its understanding of the Consent Decree's terms. 05-cv-1270, ECF No. 29 (July 31, 2006 N.Y. Letter as Amicus). The State did not object to

the entry of the Consent Decree. *See id*. Nor did the State choose to become a party to the Consent Decree or to intervene in the United States' lawsuit.

The Consent Decree provides that EPA is required to issue the Certification of Completion of the Remedial Action to GE once "EPA concludes" that "the Remedial Action has been performed in accordance with this Consent Decree." Consent Decree ¶ 57.d (Exh. A). The phrase "Remedial Action" is a defined term in the Consent Decree. It means "those activities, except for Remedial Design and Operation, Maintenance and Monitoring, to be undertaken to implement the ROD [Record of Decision], in accordance with the SOW [Statement of Work], the final Remedial Design plans and reports, the Remedial Action Work Plans, and other plans approved by EPA." Consent Decree at 9.

Expressly excluded from the term "Remedial Action" is "Operation, Maintenance and Monitoring" (OM&M). *Id*. "Operation, Maintenance and Monitoring" is defined as "all activities required to monitor and maintain the effectiveness of the Remedial Action in accordance with the plans that are required pursuant to the SOW [Statement of Work] and approved by EPA, and all other activities required pursuant to those plans." *Id*. at 6.

GE completed the specific activities that comprise the "Remedial Action," as defined in the Consent Decree. Remedial Action Completion Report (Mar. 2019) (Exh. B). Accordingly, consistent with the terms of the Consent Decree, EPA issued GE the Certification of Completion in April of 2019. *See* Apr. 11, 2019 Certification of Completion Letter from EPA to GE (2019 Letter) (Exh. C).

The Consent Decree contains various reservations of rights. These include certain post-certification reservations (sometimes referred to as reopeners) set forth in Paragraph 101.b. These allow EPA to seek GE's performance of additional work in the Upper Hudson under specified circumstances.

The Certification of Completion letter confirms these obligations. *Id.* at 2. The ongoing monitoring and maintenance program requires, among other things, regular monitoring of water quality, sediment, and fish tissue; monitoring and appropriate maintenance of the integrity of the caps that were placed during the dredging project; and monitoring and appropriate maintenance of habitat restoration work carried out after the dredging. *Id.*

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). "A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (cleaned up).

In addition, "like a contract, the scope of a consent decree must be discerned within its four corners." *Crumpton v. Bridgeport Educ. Ass'n*, 993 F.2d 1023, 1028 (2d Cir. 1993). Accordingly, "a court construing such a document is not entitled to expand or contract the agreement of the parties as set forth in the consent decree." *Id.* "The construction of a consent decree is an issue of law." *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985).

Claims that a party breached a contract may be dismissed under Rule 12(b)(6) where the contract unambiguously allows for the alleged conduct. *See Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 69 (2d Cir. 2014). *See also Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010) (dismissing under Rule 12(b)(6) claim that United States violated contract). Further, a claim that a party violated a statute may be dismissed under Rule 12(b)(6) where the allegations "fail[ ] as a matter of law." *See Wojchowski v. Daines*, 498 F.3d 99, 110 (2d Cir. 2007) (citing *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 308 (2d Cir. 2006)).

## ARGUMENT

### I.   The State Cannot Bring Claims in a New Suit Challenging the Terms of the Consent Decree or Its Implementation.

The Consent Decree entered under CERCLA is binding on EPA and GE. The State ignores entirely that the Decree conclusively establishes the parties' legal obligations. It alleges that EPA acted unlawfully in issuing a Certification of Completion under the Decree to GE before first finding that the Remedial Action was sufficiently protective. ECF No. 1, Compl. ¶¶ 38-47. The State's claims must be

dismissed. The State simply cannot challenge the terms of the Consent Decree now more than a decade after the Decree was entered. And it cannot bring claims in a separate, collateral suit asserting that EPA's conduct violated the terms of the Decree.

### A.   The Consent Decree Is Binding on EPA and GE, and Operates as a Court Order with the Force of Law.

This Court entered the Consent Decree in November of 2006. 460 F. Supp. 2d 395. The State filed a letter as amicus curiae addressing its understanding of the Decree, and did not oppose entry of the Decree before the court. 05-cv-1270, ECF No. 29 (July 31, 2006 N.Y. Letter as Amicus). The State did not—even though it easily could have—choose to become a party to the Consent Decree or to intervene in the United States' lawsuit.[1]

The Court's authority to adopt the Consent Decree "comes only from the statute which the decree is intended to enforce." *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 576 (1984). Here, to determine whether entry of the Consent Decree was proper under CERCLA, the Court considered whether the proposed decree "is fair, reasonable, and faithful to the objectives of CERCLA." *Gen. Elec. Co.*, 460 F. Supp. 2d at 401. The Court also addressed the objections of Intervenor Town of Fort Edward. *Id*. at 400. After a detailed analysis, the Court rejected the Intervenor's objections, and held that the "Consent Decree is both procedurally and

---

[1] In contrast, the Town of Fort Edward did intervene in the suit, objected to the entry of the Consent Decree, and then appealed (unsuccessfully) entry of the Consent Decree. 460 F. Supp. 2d at 400-01; No. 06-5535-cv (2d Cir. Jan. 3, 2008).

substantively fair," and that it comported with CERCLA. *Id*. at 402. The Court's order entering the Decree further provided that the Consent Decree "constitutes a Final Judgment pursuant to Fed. R. Civ. P. 54(b)." *Id*. at 404; *see also* Consent Decree at 76, Section XXXV (same) (Exh. C).[2]

The Consent Decree thus carries the legal force of a contested decision on the merits. "This is so because the entry of a consent judgment is an exercise of judicial power . . . that is entitled to appropriate respect and because of the policy favoring finality of judgments." *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987). In other words, a consent decree is "enforceable as[ ] a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). The terms of the Consent Decree are legally binding and govern both enforcement of the Decree, and also whether EPA acted lawfully in issuing the Certification of Completion of the Remedial Action to GE. *See id*.

## B.    The State Is Precluded from Bringing an Independent Suit to Challenge the Terms of the Consent Decree or Its Implementation.

The State's allegation that EPA acted unlawfully in issuing the Certification of Completion under the Consent Decree without first making a protectiveness

---

[2] The Court may properly consider the Consent Decree in resolving this motion to dismiss because the decree is integral to the State's Complaint, and so is incorporated by reference. *See L-7 Designs, Inc.*, 647 F.3d at 422. The Court may also consider the Remedial Action Completion Report (addressed in ¶ 24 of the Complaint), and the letter accompanying the Certification of Completion, which is integral to the Complaint. *Id*.

finding directly implicates the Consent Decree itself. It is not clear whether the State contends that the terms of the Consent Decree are inconsistent with CERCLA, or instead if EPA's issuance of the Certification is inconsistent with the Consent Decree. *See* Compl. ¶ 39 (EPA must "first make a finding that the remedial action . . . is sufficient to protect human health and the environment before issuing the Certificate (sic) of Completion to GE."); ¶ 43 (issuance of the Certification was "outside the scope of the agency's authority under CERCLA" because there was no protectiveness finding); ¶ 47 (EPA acted arbitrarily in issuing Certification without making protectiveness finding). But, regardless of how its claims are construed, the State's claims are barred.

### 1.   The State cannot assert that the Consent Decree is inconsistent with CERCLA.

The State seeks to import a new requirement into the binding Consent Decree. It alleges that EPA should have made a protectiveness finding before issuing the Certification of Completion under the Decree because CERCLA purportedly requires such a finding in these circumstances. *See* Compl. ¶¶ 43, 47. But, any claim that the Consent Decree is inconsistent with CERCLA should have been brought as an objection to the entry of the Consent Decree in that proceeding before the Decree was entered in 2006, and is impermissible now. As discussed above, the Court's authority to enter the Consent Decree was based on CERCLA. *See Firefighters*, 467 U.S. at 576. To enter the Decree, the Court necessarily examined whether the Decree's terms were consistent with CERCLA, and concluded that they were. *Gen. Elec. Co.*, 460 F. Supp. 2d at 402-04.

Entry of the Consent Decree was thus a conclusive determination that its terms are lawful and comply with CERCLA's requirements. *See id.* at 404; *Frew*, 540 U.S. at 437. Having failed to make any objection when the Consent Decree was entered some 13 years ago, the State is barred from claiming now that the Decree's terms are unlawful. In other words, the State cannot now assert that CERCLA requires the Agency to make additional findings—i.e., make a protectiveness determination—beyond that required by the Decree itself before issuing the Certification of Completion. *See Amalgamated Sugar*, 825 F.2d at 639.

The sole mechanism for relitigating the settled question of law of what CERCLA requires (to the extent there is one) would be a motion to modify the consent decree under Federal Rule of Civil Procedure 60(b). *See U.S. ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cty.*, 712 F.3d 761, 775 (2d Cir. 2013) (mechanism for changing legal obligations of consent decrees is a Rule 60(b) motion); Fed. R. Civ. P. 60(b)(5)&(c)(1) (requiring showing that decree is no longer equitable, and that motion was brought "within a reasonable time"). In other words, the only avenue to assert that the Consent Decree's terms are inconsistent with CERCLA is to seek modification of the legal obligations established by the Consent Decree *in the Consent Decree proceeding. See id.* A suit under the APA is plainly not the appropriate vehicle to advance such claims.

But, even if the State could establish the exceedingly high showing necessary to compel modification under Rule 60(b) in the Consent Decree proceeding, it presently lacks standing as a nonparty to bring such a motion. Federal Rule of Civil

Procedure 60(b) provides only that a court "may relieve *a party* . . . from a final judgment"—not anyone with an interest in that judgment. *See also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) (general rule is that "a consent decree is not enforceable directly . . . by those who are not parties to it even though they were intended to be benefited by it."); *SEC v. Prudential Sec., Inc.*, 136 F.3d 153, 159 (D.C. Cir. 1998) (similar).[3] As discussed above, the State chose more than a decade ago not to become a party to the Consent Decree proceeding, and so lacks standing to bring a motion in that suit now.

For all of these reasons, the State cannot assert in this collateral suit that CERCLA obligates EPA to take any actions beyond those required by the binding Consent Decree.

### 2.    Nor can the State seek to enforce any of the Consent Decree's requirements in this suit.

To the extent that the State is asserting that EPA has violated the terms of the Consent Decree when it issued the Certification to GE before making a protectiveness finding, the State cannot mount such a challenge here. *See* Compl. ¶¶ 38-47. It is well established that efforts to enforce under a Consent Decree must be brought in the Consent Decree proceeding, and not in a different lawsuit under a separate statutory scheme. *See Blue Chip Stamps*, 421 U.S. at 750 (third party

---

[3] In extremely limited circumstances not present here, the Second Circuit has held that a nonparty has standing to bring a Rule 60(b) motion. *See Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006) (concluding "where plaintiffs enter into a settlement agreement with a judgment-proof, *pro se* defendant with the intent at the time of the settlement to collect from a third party," "the third party is . . . entitled to standing to bring a Rule 60(b) motion.").

generally cannot seek enforcement of consent decree in separate proceeding). For example, in *Holiday v. Martinez*, 68 F. App'x 219 (2d Cir. 2003), the Second Circuit rejected an effort to enforce a consent decree through a new suit. The court held that "parties must seek enforcement through the issuing court, not through a separate action." *Id.* at 221; *Febres v. City of New York*, 238 F.R.D. 377, 390 (S.D.N.Y. 2006) (same). Applied here, this rule means that the State cannot bring a new lawsuit to enforce the requirements of a Consent Decree. *See Holiday*, 68 F. App'x at 221.

## II.   The State Cannot Bring Claims Under the APA Because It Had an Adequate Remedy at Law.

Not only are the State's collateral claims improper for the reasons stated above, the text of the APA confirms that a cause of action under that statute is unavailable.[4] The APA provides a cause of action where, among other things, "there is no other adequate remedy in a court." *Niagara Mohawk Power Corp. v. FERC*, 306 F.3d 1264, 1268-69 (2d Cir. 2002) (citing 5 U.S.C. § 704) (holding no APA claim where litigant could seek relief against private litigant under different statute). The purpose of this restriction is to "prevent[ ] plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match–E–Be–Nash– She–Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). A cause of action under section 704 is precluded even where the litigant cannot presently invoke the other remedy because relief under that statute is time-barred,

---

[4] The State only brought claims under the APA. *See* Compl.

or there exist certain other requirements (like notice) that the litigant has not satisfied. *See, e.g.*, *Envtl. Integrity Project v. EPA*, 160 F. Supp. 3d 50, 63 (D.D.C. 2015) (no APA claim where claim under the Clean Air Act available if timely and notice provided to the agency).

Here, there *was* another adequate remedy available to the State under CERCLA. Had the State chosen to intervene in the Consent Decree proceeding, then the procedures sent forth in CERCLA would have allowed it to contest the terms of the Consent Decree just like the Town of Fort Edward. And, had the State participated as a party in the Consent Decree proceeding, it could now file a motion to enforce the Decree if it thinks that EPA somehow violated the terms of the Decree. *See supra* at 12-13. Having failed to avail itself of these opportunities, the APA simply does not provide the State a second chance to advance its interests. Just like in *Environmental Integrity Project*, that the State could have brought claims in another venue at a different time ends the matter. 160 F. Supp. 3d at 63. *See also Niagara Mohawk*, 306 F.3d at 1268-69.

Thus, regardless of how the State's claims are construed, its claims are foreclosed. Allowing the State to invoke the APA would have sweeping ramifications on the finality of consent decrees involving the United States. It would mean that entities that sat on their hands, and did not intervene in consent decree proceedings, could seek to have the United States' actions vacated decades after a decree was entered, and without regard to what the decree actually required. In

contrast, those that diligently intervened would be limited to the remedies available under the decree. Congress did not intend the APA to be used in this way.

### III. The State Has Failed to State a Claim Because the Consent Decree Unambiguously Allowed for Issuance of the Certification, and the Certification Is Consistent With CERCLA.

Even if the State could invoke the APA and obtain review, its allegations that EPA acted unlawfully when it issued the Certification under the Consent Decree fail to state a claim for relief. The State alleges that EPA acted unlawfully because CERCLA requires that before a "covenant not to sue" can be issued, EPA must certify the "remedial action has been completed in accordance with the requirements of this Act." Compl. ¶¶ 9-11. And, in the State's view, CERCLA further mandates that before EPA can make this Certification under the Decree, it must determine that the "remedial action" at issue is fully protective of human health and the environment. *Id.* ¶ 9. But, the Consent Decree unambiguously permitted—and in fact, required—EPA to issue the Certification of Completion to GE upon completion of the "Remedial Action" as defined by the Decree. And, the State's allegations that this aspect of the Decree does not comport with CERCLA fail as a matter of law. Thus, dismissal is appropriate on this basis as well. *See Keiler*, 751 F.3d at 69 (affirming dismissal of contract claims where relevant contract provision was unambiguous); *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 214 (2d Cir. 2012) (affirming dismissal of statutory claims where no statutory violation alleged).

### A.   EPA Was Required to Issue the Certification to GE Under the Unambiguous Terms of the Consent Decree.

"[L]ike a contract, the scope of a consent decree 'must be discerned within its four corners.'" *Crumpton*, 993 F.2d at 1028. Accordingly, "a court construing such a document is not entitled to expand or contract the agreement of the parties as set forth in the consent decree." *Id*. (cleaned up).

As a threshold matter, the Consent Decree provides that EPA was required to issue the Certification of Completion to GE once "EPA concludes" that "the Remedial Action has been performed in accordance with this Consent Decree." Consent Decree ¶ 57.d. The phrase "Remedial Action" is a defined term in the Consent Decree. It means "those activities, *except for Remedial Design and Operation, Maintenance and Monitoring*, to be undertaken to implement the [Record of Decision], in accordance with the [Statement of Work], the final Remedial Design plans and reports, the Remedial Action Work Plans, and other plans approved by EPA." Consent Decree at 9 (emphasis added).

Expressly excluded from the term "Remedial Action" is "Operation, Maintenance and Monitoring." *Id*. "Operation, Maintenance and Monitoring" (ongoing monitoring and maintenance) is separately defined as "all activities required to monitor and maintain the effectiveness of the Remedial Action in accordance with the plans that are required pursuant to the [Statement of Work] and approved by EPA, and all other activities required pursuant to those plans." *Id*. at 6. Thus, the Consent Decree is clear that ongoing monitoring and maintenance—

even ongoing monitoring and maintenance necessary to assure protectiveness—takes place after the Remedial Action is completed.

Here, there is no dispute that GE completed the specific activities that comprise the "Remedial Action," as defined in the Consent Decree. *See* Apr. 2019 Letter. The State, in fact, concedes this point. *See* Compl. ¶ 37 (noting "GE's completion of the remedial work required by the Consent Decree"). Thus, GE was entitled to the Certification of Completion of the Remedial Action under paragraph 57.d of the Consent Decree.[5]

To be sure, GE has not completed all the necessary ongoing monitoring and maintenance required under the Decree. EPA acknowledged this in the Certification of Completion letter. *See* Apr. 2019 Letter at 2-3. But, as discussed above, these tasks are expressly excluded from the definition of "Remedial Action" for which the Certification was given. As such, EPA could (and indeed, was required) to issue the Certification of Completion of the Remedial Action before the ongoing monitoring and maintenance was complete.

### B. The State's Factual Allegations, Even if True, Would Not Demonstrate that the Consent Decree Is Inconsistent with CERCLA.

The State alleges that—notwithstanding the terms of the Decree which undisputedly authorized EPA to issue the Certification—EPA's action violates CERCLA. The State reasons that CERCLA required EPA to determine that the

---

[5] EPA disagrees with the State's contentions about the effectiveness of the Remedial Action. Nevertheless, the Court need not address those issues because the State has not stated a claim for relief.

"remedial action" is presently fully protective, meaning that all remedial goals have been attained, and all monitoring is complete. The Consent Decree's requirements regarding issuance of the Certification, however, are consistent with CERCLA. Thus, by definition, the State's claims that EPA violated CERCLA by issuing the Certification "fail[ ] as a matter of law." *Wojchowski*, 498 F.3d at 106.

       **1.**    **CERCLA's definition of remedial action is consistent with the Consent Decree's definition of the same term.**

The Consent Decree's definition of the term "Remedial Action" for purposes of the Hudson River PCB Site as excluding ongoing monitoring and maintenance is thus fully consistent with CERCLA's definition. CERCLA defines "remedial action" as "those actions consistent with permanent remedy . . . in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment . . .." 42 U.S.C. § 9601(24). The definition continues to provide a non-exclusive list of examples of remedial action including the following:

> [S]uch actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. The term includes the costs of permanent relocation of residents and businesses and community facilities . . . ., offsite transport and offsite

storage, treatment, destruction, or secure disposition of hazardous
substances and associated contaminated materials.

*Id.* The most natural reading of this list is that remedial action may extend to these

or similar activities in the appropriate circumstances. The definition does not

convey that every remedial action must include all such activities (clay cover of the

release, segregation of reactive wastes, permanent relocation of residents, etc.). To

find otherwise, and conclude that every remedial action must always include each

one of these activities, including monitoring, is nonsensical given the differences

between remedial actions at different sites.

Further, CERCLA distinguishes between "remedial action" and long term,

future "operation and maintenance." Section 9604(c) discusses "remedial action"

separate from "operation and maintenance." Likewise, section 9620(e) requires a

schedule for the completion of remedial actions, and separately, a description of the

arrangements for long-term operation and maintenance.

The narrower definition of Remedial Action employed in the Consent Decree

also makes perfect sense in the circumstances here. The Decree further provides

that if EPA finds that the Remedial Action is not protective, EPA may select

additional response actions for the Hudson River PCB Site, for which GE can bear

responsibility. The Consent Decree also contains various reservations of rights,

including the post-certification reservations (sometimes referred to as reopeners) set

forth in Paragraph 101.b, which allow EPA to seek GE's performance of additional

work in the Upper Hudson under specified circumstances.

EPA acknowledged in the Certification of Completion Letter that GE's obligations at the Hudson River PCB Site will continue for some time. The letter provides that GE is responsible for ongoing monitoring and maintenance including regular monitoring of water quality, sediment, and fish tissue; monitoring and appropriate maintenance of the integrity of the caps that were placed during the dredging project; and monitoring and appropriate maintenance of habitat restoration work carried out after the dredging. *See* Apr. 2019 Letter at 2-3. GE has already commenced work under the ongoing monitoring and maintenance program, and that work will continue for decades to come. *Id.*

### 2. The Consent Decree's contingent release of liability is consistent with CERCLA.

Next, CERCLA does not mandate that the Consent Decree require that the Hudson River PCB Site remedy is complete before a contingent release of liability may be issued to GE. The State alleges that CERCLA prohibits the issuance of a Certification of Completion here because, under the Consent Decree, one consequence of that Certification is that GE receives a contingent release of liability. Compl. ¶¶ 38-47. More specifically, the State argues that CERCLA bars any release from liability until the entire cleanup is complete because section 9622(f)(3) provides that a covenant not to sue "shall not take effect" until EPA "certifies that" the "remedial action has been completed in accordance with CERCLA," and section 9621(d)(1) requires that the "selected" remedial actions "achieve a degree of cleanup . . . that assures protection of human health and the environment." Compl. ¶ 39. In other words, the State contends that, in every

circumstance under CERCLA, the cleanup must be entirely complete—including all long-term monitoring of the remedial action—before a covenant not to sue can take effect. CERCLA does not contain such a requirement.

Section 9622(f)(3) does not mandate that a cleanup must be finished once and for all before any release is issued. CERCLA instead provides more generally that a release can be issued once EPA "certif[ies] that remedial action has been completed in accordance" with CERCLA's requirements. As discussed above, CERCLA broadly defines the term "remedial action" to include an array of activities. The statute thus allows the Agency to define remedial action narrowly as appropriate in a given circumstance.[6]

Thus, EPA's issuance of the Certification of Completion of the Remedial Action was required by the Consent Decree. Further, the State's allegations that the terms of the Decree requiring EPA to issue the Certification violate CERCLA fail as a matter of law. Accordingly, the claims should be dismissed because the allegations fail to state a viable claim for relief.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

---

[6]    Further, section 9622(a)—the provision that provides EPA authority to enter into settlements like the Consent Decree here—states that EPA "may enter into an agreement with any person . . . to perform any response action" so long as EPA "determines that such action will be done properly by such person." This provision confirms that the Agency is afforded broad discretion in determining whether a settlement is warranted, and the terms of such an agreement. § 9622(a).

Respectfully submitted,

/s/ *Meghan E. Greenfield*
Meghan E. Greenfield
Sarah Buckley
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice